Mr. John S. Robb Counsel for Unified School District No. 373 110 E. Broadway, Box 544 Newton, Kansas 67114
Dear Mr. Robb:
As legal counsel for unified school district no. 373 (USD 373), you request our opinion regarding the legality of a release time program available in USD 373. Specifically, you ask the following:
 1. whether the Bible school program as operated in the school district is legal;
 2. whether the school district violates constitutional limits when school personnel provide information and materials regarding the Bible school program and assist in enlisting pupils in the program;
 3. whether the school district violates constitutional limits by allowing representatives of the Bible school program to set up a table on school property at the time of enrollment of pupils for the purpose of distributing information and materials regarding the Bible school program; and
 4. whether time spent by pupils in the Bible school program may be counted as part of the school day in meeting the total number of hours of school required in K.S.A. 72-1106.
According to the information provided, elementary school-age children in Newton have for over 70 years been afforded the opportunity to attend a weekday Bible school. The Bible school was developed by interested citizens in the community. The Bible school consists of presentations made by interested citizens at churches or other locations in the community. The time a pupil spends attending the Bible school, approximately 45 minutes one day a week, is considered by USD 373 as an excused absence for the pupil, although this is not recorded on the pupil's records. Personnel of USD 373 take no part in the development of or presentations at the Bible school, nor is financial support of the Bible school provided by USD 373. While personnel of USD 373 maintain a record of pupils who have enlisted in the Bible school and attempt to ascertain whether the pupils excused to attend the Bible school actually do so, pupils attending the Bible school are not under the supervision of personnel of USD 373 during the time the pupils are attending the Bible school. Materials regarding the weekday Bible school are provided by personnel of USD 373 to the parents of the pupils during enrollment at the beginning of each school year for USD 373.
In Attorney General Opinion No. 73-242, Attorney General Schneider reviewed whether permitting pupils to participate in the weekday Bible school during school time violated the first amendment of the United States constitution or section 7 of the bill of rights of the Kansas constitution. Finding the situation was similar to one reviewed inZorach v. Clauson, 343 U.S. 306, 96 L.Ed. 954, 72 S.Ct. 679 (1952), the Attorney General determined that the constitutional provisions were not violated when pupils were released by the school district to attend the Bible school. VIII AGO 920. Citing statutory language that a school month consisted of "six (6) hours per day on which pupils of a school areunder the direct supervision of its teacher or teachers while they areengaged together in educational activities," the Attorney General determined the time spent by a pupil attending the Bible school could not be counted towards attendance in school. VIII AGO at 920 (emphasis in original).
The United States Supreme Court has added no case law of significance regarding the authority of public schools to release pupils from school to attend religious-based instruction since making its determination inZorach. We concur with the conclusion expressed in Attorney General Opinion No. 73-242 that a school district does not violate constitutional provisions when releasing pupils during the school day to attend a weekday Bible school conducted by interested citizens at a church or other designated location.
It is unclear whether, at the time Attorney General Opinion No. 73-242 was issued, school officials assisted in the distribution of information regarding the weekday Bible school. We therefore address that issue in this opinion.
In your request, you indicate the school district may have in place a policy of permitting representatives of Boy Scouts, Girl Scouts, and a parent-teacher organization to distribute information and materials regarding their organizations and to enlist pupils in their organizations during enrollment at the school district. The existence of such a policy is an important factor.
In Lamb's Chapel v. Center Moriches, 508 U.S. ___, 124 L.Ed.2d 352,113 S.Ct. 2141 (1993), and Widmar v. Vincent, 454 U.S. 263, 70 L.Ed.2d 440,102 S.Ct. 269 (1981), the United States Supreme Court reviewed the constitutionality of state policies which permitted use of school or university facilities for a variety of purposes, expressly excluding use of the facilities for religious purposes. The school board in Lamb'sChapel relied on its policy in denying the application of a church to use the school's facilities for the purpose of showing a six-part film series dealing with family issues and child-rearing from a religious standpoint, conceded by the church to be for religious purposes. Lamb'sChapel, 124 L.Ed.2d at 359. The university in Widmar did likewise in terminating use of its facilities by a registered student group desiring to use the university's facilities for religious worship and discussion.Widmar, 70 L.Ed.2d at 444-45. The policies reviewed in Lamb's Chapel andWidmar were subjected to review under the free speech clause as well as the establishment clause.
There is no question that a school, like the private owner of property, may legally preserve the property under its control for the use to which it is dedicated. Rosenberger v. Rector Visitors of theUniversity of Virginia, ___ U.S. ___, 132 L.Ed.2d 700, 715, 115 S.Ct. 2510,2516 (1995); Lamb's Chapel, 124 L.Ed.2d at 360; Widmar, 70 L.Ed.2d at 446, fn. 5. [While in Widmar it was determined a public forum existed,Widmar, 70 L.Ed.2d at 446, the court in Lamb's Chapel did not review a lower court's determination that the forum was nonpublic. Lamb's Chapel,124 L.Ed.2d at 361.] The necessities of confining a forum to the limited and legitimate purposes for which it was created may justify the state in reserving it for certain groups or for the discussion of certain topics.Rosenberger, 132 L.Ed.2d at 715; Lamb's Chapel, 124 L.Ed.2d at 361. Once it has opened a limited forum, however, the state must respect the lawful boundaries it has itself set. Rosenberger, 132 L.Ed.2d at 715. "[T]he interest of the State in avoiding an Establishment Clause violation `may be [a] compelling' one justifying an abridgment of free speech otherwise protected by the First Amendment. . . ." Lamb's Chapel. 124 L.Ed.2d at 363, citing Widmar, 70 L.Ed.2d at 448.
In both Lamb's Chapel and Widmar, the Supreme Court subjected the policies to the Lemon test and determined that the establishment clause was not violated when a school or university permitted use of its facilities by a wide range of organizations, including religious organizations. Any benefit conferred under such an open access policy would be no more than incidental. Lamb's Chapel, 124 L.Ed.2d at 363;Widmar, 70 L.Ed.2d at 450. "[A] religious organization's enjoyment of merely `incidental' benefits does not violate the prohibition against the `primary advancement' of religion." Widmar, 70 L.Ed.2d at 450. Absent a compelling reason for the restrictions in the policies, the restrictions were viewed as content-based restrictions on speech. Lamb's Chapel,124 L.Ed.2d at 362; Widmar, 70 L.Ed.2d at 452. "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." Rosenberger, 132 L.Ed.2d at 714.
The policy of USD 373 is subject to the same review. If the policy of the school district is to have school personnel distribute information and materials regarding organizations seeking pupils for enlistment or to permit representatives of such organizations to distribute information and materials on school district property, the policy would resemble the open access policies reviewed in Lamb's Chapel and Widmar. Under such an open access policy, the school district would not be permitted to preclude the Newton Weekday Bible School or its representatives from abiding by the policy of the school district by either providing for distribution by school personnel information and materials regarding the Bible school or by having a representative of the Bible school distribute on school property information or materials regarding the Bible school. Given the authority conferred under K.S.A. 72-1033, establishment of a specific policy is subject to the discretion of the local board of education.
K.S.A. 72-1106 obligates local boards of education to establish a school term for the designated number of days or hours subject to waiver for inclement weather. A parent, or a person acting as a parent, who has control over or charge of any child who has reached the age seven years and is under the age of 16 years, is required to ensure that the child enrolls in and attends continuously each school year a public school for the duration of the school term or a private, denominational, or parochial school taught for a period of time which is substantially equivalent to the period of time public school is maintained. K.S.A.72-1111. The lawful custodian of a child determined to be an exceptional child in need of special educational services is required to ensure the child enrolls for and attends the educational services indicated in the child's educational plan. K.S.A. 72-977. Pursuant to K.S.A. 1995 Supp.72-1113:
 "(c)(1) Whenever a child is required by law to attend school and is enrolled in school, and the child is inexcusably absent therefrom on either three consecutive school days or five school days in any semester or seven school days in any school year, whichever of the foregoing occurs first, the child shall be considered to be not attending school as required by law. A child is inexcusably absent from school if the child is absent therefrom all or a significant part of the school day without a valid excuse acceptable to the school employee designated by the board of education to have responsibility for the school attendance of such child.
 "(2) Each board of education shall adopt rules for determination of valid excuse for absence from school and for determination of what shall constitute a `significant part of a school day' for the purpose of this section." (Emphasis added.)
The school district is obligated to operate its schools for the term prescribed in K.S.A. 72-1106. There is no requirement that a child physically attend every minute of every day of a school term, nor does state statute obligate a unified school district to maintain records regarding excused absences of a child. A child enrolled in and attending school for the school term meets the compulsory attendance requirements. A child is deemed to be enrolled in and attending school unless the child has been inexcusably absent from school for the number of days set forth in K.S.A. 1995 Supp. 72-1113. It is within the discretion of the unified school district to establish criteria for determining whether a child is inexcusably absent for a significant part of the school day.
In review, we concur with the conclusion expressed in Attorney General Opinion No. 73-242 that unified school district no. 373 does not violate constitutional provisions when releasing pupils during the school day to attend the Newton Weekday Bible School conducted by interested citizens at a church or other designated location. If the policy of the school district is to have school personnel distribute information and materials regarding organizations seeking pupils for enlistment or to permit representatives of such organizations to distribute information and materials on school district property, the school district would not be permitted to preclude the Newton Weekday Bible School or its representatives from abiding by the policy of the school district by either providing for distribution by school personnel information and materials regarding the Bible school or by having a representative of the Bible school distribute on school property information or materials regarding the Bible school. A child is deemed to be enrolled in and attending school unless the child has been inexcusably absent from school for the number of days set forth in K.S.A. 1995 Supp. 72-1113. It is within the discretion of the unified school district to establish criteria for determining whether a child is inexcusably absent for a significant part of the school day.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm